IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOHN, H.[1],

                    Plaintiff,

            v.

MARTIN O'MALLEY, Commissioner
of Social Security,

                    Defendant.

Case No. 2:23-cv-23-SI

**OPINION AND ORDER**


Chad Hatfield, HATFIELD LAW PLLC, 8131 Klamath Ct., Suite D, Kennewick, WA 99336.
Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED
STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; and
Gabriel Bono, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL,
Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys
for Defendant.

**Michael H. Simon, District Judge.**

        Plaintiff John H. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for Disability

---

        [1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party in this case. When applicable, this Opinion and
Order uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) under the Social Security Act (Act). For the reasons explained below, the Court reverses the Commissioner's decision and remands for further proceedings.

## STANDARD OF REVIEW

The decision of the Administrative Law Judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB on February 19, 2020. AR 15. He initially alleged an onset date of October 10, 2010, but at the hearing he amended his claim to a closed period of disability starting August 1, 2016, and ending October 15, 2020. AR 33. Plaintiff was born on October 2, 1975, AR 204, making him 40 years old as of the amended onset date. Before filing for disability, Plaintiff worked as a parole officer, law enforcement technician, community justice officer, and admissions counselor. AR 224. These equated to Department of Occupational Titles jobs of parole officer, probation and parole officer, and recruiter. AR 22. Plaintiff contended he was unable to work due to herniated disc, ruptured disc, disc degenerative disease, nerve damage, and stenosis. AR 223. The agency denied Plaintiff's application both initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ. AR 79, 103, 106. Plaintiff and his attorney appeared by telephone before the ALJ on December 14, 2021, along with an independent medical expert and a vocational expert. AR 15. On January 5, 2022, the ALJ determined that Plaintiff was not disabled under the Act during the relevant time. AR 23. On October 31, 2022, the Appeals Council denied Plaintiff's request for review, AR 1, making the ALJ's opinion the final opinion of the Commissioner. Plaintiff seeks judicial review of that opinion.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If

the analysis continues beyond step three, the ALJ must evaluate medical and other relevant

evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v.*

*Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d

at 1100. At step five, the Commissioner must show that the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R.

§§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the

Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform

other work existing in significant numbers in the national economy, the claimant is not disabled.

*Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C.  The ALJ's Decision**

Before beginning the sequential analysis, the ALJ determined that Plaintiff had disability

insurance coverage through December 31, 2018. AR 15. At step one of the sequential analysis,

the ALJ determined that Plaintiff did not engage in substantial gainful activity after the initial

alleged onset date of October 10, 2010 through his date last insured of December 31, 2018.

AR 17. At step two, the ALJ determined that Plaintiff suffered from one severe impairment:

degenerative disc disease. AR 18. In each functional area, the ALJ found that Plaintiff's

medically determinable mental impairments were not severe and were unlikely to cause more

than mild limitation to Plaintiff's ability to perform basic work activities. AR 18-19. At step

three, the ALJ determined that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. AR 19.

The ALJ then determined that, through the date insured, Plaintiff had the RFC to perform

light work with the following limitations:

> he could sit up to four hours a day and stand/walk in any
> combination for four hours a day and would need to be able to
> change position from sitting to standing/walking and vice versa at
> will, which could be done at the workstation; could not climb
> ladders, ropes, and scaffolds and could only occasionally stoop,
> crouch, kneel, crawl, and climb stairs and ramps; and no operating
> of heavy machinery or equipment; and he could have only
> occasional contact with the public and coworkers.

AR 19. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant

work from the alleged onset date through the date last insured. AR 22. At step five, the ALJ

determined that there were jobs that existed in significant numbers in the national economy that

Plaintiff could have performed such as collator operator, small products assembler, and office

helper. AR 22-23. Therefore, the ALJ concluded that Plaintiff was not disabled under the Act

from the amended onset date of August 1, 2016,[2] through the date last insured of December 31,

2018. AR 23.

---

[2] The ALJ opined about the original alleged onset date of October 10, 2010. Plaintiff,
however, amended his alleged onset date at the hearing to August 1, 2016.

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (A) improperly discrediting Plaintiff's subjective symptom testimony; (B) improperly evaluating the medical opinion evidence; and (C) providing an incomplete hypothetical to the vocational expert at step five. The Court addresses each argument in turn.

**A.  Plaintiff's Symptom Testimony**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *7-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Here, Plaintiff testified to experiencing severe back pain that caused him to miss work frequently until stopping altogether in 2010. AR 40-41. He attempted to return to work in 2016, but the pain progressed, forcing him to stop working and participating in hobbies like hiking and fishing. AR 41. Plaintiff further testified about his increased difficulty walking and lifting things like a gallon of milk without experiencing pain. AR 41. Plaintiff stated that two neurosurgeons recommended back surgery, but he declined. AR 42.

He explained that the surgeons described that they could not guarantee a good result from the surgery, that there were significant risks to the surgery, and that he likely would need additional surgeries in the future if he had this surgery. AR 42-43. He also conducted his own research, including talking to people who had back surgery, and decided to avoid the surgery until he was older and hopefully the technology improved. AR 43-44. He instead opted for various other treatments, including acupuncture, massage, walking, stretching, yoga, marijuana, CBD oil, a TENS unit, an inversion machine, opioid painkillers, muscle relaxers, trigger point injections, and physical therapy. AR 44-45, 47. But these all lacked long-term effectiveness and many caused unwanted side effects. AR 49-51.

Plaintiff explained that he attempted to work multiple times from 2017 to 2019 although each attempt was short-lived as prolonged sitting would cause him pain that resulted in three to five missed workdays per month. AR 48-49. Plaintiff testified, however, that he returned to work

in 2020, after receiving some benefit from treating with an H-wave electrical stimulation machine and getting a job from a friend with significant accommodations allowing him to change positions, take breaks, and lie flat on the floor. AR 52-53. Even with these accommodations, Plaintiff misses at least three to four days of work per month and is in the "hole" 80 hours on his sick time. AR 53-54. His friend allows him to continue working despite these absences, although Plaintiff is not sure how much longer his friend will allow him to continue employment. AR 54.

The ALJ explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 20. The ALJ then provided four reasons for discrediting Plaintiff's subjective symptom testimony: (1) Plaintiff's allegations were not consistent with his attending and graduating college; (2) Plaintiff's allegations were not consistent with his work activities; (3) Plaintiff improved with conservative treatment; and (4) the objective imaging did not support Plaintiff's testimony. The ALJ next summarized the record evidence, without identifying any specific testimony by Plaintiff that the ALJ found inconsistent with any specific piece of evidence.

### 1. Specificity

Plaintiff argues that the ALJ's opinion is not sufficiently specific to allow for meaningful Court review. An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vavaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a claimaint's] pain testimony

where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphases in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

"[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible." *Brown-Hunter*, 806 F.3d at 489. And reaching a conclusion about the plaintiff's testimony and summarizing the medical evidence, even if a district court can reasonably draw inferences regarding inconsistencies from that summary of medical evidence, does not suffice to meet the ALJ's burden. *Id.* at 494. This is because a court may only affirm based on reasons asserted by the ALJ, and the district court may not "comb the administrative record to find specific conflicts." *Id.* (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

*Lambert* is particularly instructive here. In *Lambert*, the ALJ made a similar boilerplate introductory statement about the claimant's testimony not being fully consistent with the record, provided four similar high-level reasons for discounting the claimant's testimony, and then summarized the claimant's medical record. 980 F.3d at 1270, 1277-78. The Ninth Circuit

rejected the ALJ's analysis, explaining that "providing a summary of medical evidence is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id.* at 1278 (cleaned up) (emphasis in original). The Ninth Circuit further explained that the district court was not permitted to "shore up" the ALJ's analysis by comparing specific aspects of the record that contradict portions of the claimant's testimony, reiterating that "'[a]lthough the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make,' and '[courts] are constrained to review the reasons the ALJ asserts.'" *Id.* (quoting *Brown-Hunter*, 806 F.3d at 494).

The Commissioner summarily concluded that the ALJ made sufficiently specific findings. The Commissioner, however, cited no instance of the ALJ identifying any specific testimony or linking any testimony to record evidence. That is what is needed to meet the Ninth Circuit's specificity requirement. *See, e.g.*, *Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."); *Burrell*, 775 F.3d at 1139 (rejecting the ALJ's inconsistency analysis because the "ALJ never connected the medical record to Claimant's testimony about her headaches" and explaining that "the ALJ did not make a specific finding linking a lack of medical records to Claimant's testimony about the intensity of her back, neck, and head pain"). Accordingly, the Court rejects the ALJ's analysis of Plaintiff's subjective testimony as lacking specificity. Even if the Court considered the ALJ's proffered reasons on the merits, however, they still fail to meet the clear and convincing standard.

### 2.  College

The ALJ discredited Plaintiff's testimony because he "attended school, graduating in 2017."[4] AR 20. As an initial matter, the ALJ misstated the record. The record shows that Plaintiff graduated from college in September 2016, just one month after the onset date. AR 224. Assuming the ALJ considered this evidence to contradict Plaintiff's assertions regarding the amount of time Plaintiff could walk, sit, and stand, the record evidence is not clear and convincing on this point. Plaintiff explained he took a mixture of on-campus and online courses. AR 58. Nothing in the record suggests this month of schooling involved walking, sitting, or standing beyond Plaintiff's claimed capacity. The Court concludes there is not substantial evidence in the record regarding Plaintiff's engagement in this activity and whether such engagement was inconsistent with his testimony to be a clear and convincing reason to discount Plaintiff's testimony.

### 3.  Work Activities

The ALJ also cited Plaintiff's work history in analyzing Plaintiff's symptom testimony. The ALJ noted that Plaintiff returned to gainful employment in the fourth quarter of 2020 (when Plaintiff went to work for his friend who accommodated Plaintiff's need to change positions, lay

---

[4] The Commissioner argues that the ALJ also discredited Plaintiff's testimony because he reported hiking during the relevant period. The ALJ, however, did not identify Plaintiff's hiking as a *reason* to discredit any specific aspect of Plaintiff's testimony. The ALJ mentioned Plaintiff's report of hiking when summarizing Plaintiff's medical record. The ALJ did not correlate this part of the medical record summary with any specific testimony by Plaintiff or otherwise identify or explain if it affected the ALJ's consideration of Plaintiff's testimony. As discussed above, simply summarizing the medical record is not sufficiently specific for the Court to ascertain whether aspects of the medical record summarized were considered by the ALJ in the ALJ's assessment of Plaintiff's testimony. *See, e.g.*, *Brown-Hunter*, 806 F.3d at 489, 494. Thus, the Court rejects the Commissioner's *post hoc* rationalization. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

flat, take breaks, and have absences). The ALJ stated that Plaintiff claims his work attempts during the relevant period were unsuccessful work attempts, but the ALJ then stated that Plaintiff "did return to gainful work activity during the relevant period." AR 17. It is not clear what the ALJ considered to be the relevant period, because the ALJ adjudicated from October 10, 2010, the original alleged onset date, through December 31, 2018, the date last insured. The amended alleged onset date, August 1, 2016, should have been the beginning of the relevant period. And Plaintiff must have become disabled before December 31, 2018, the date last insured, for him to obtain benefits. He then must have remained disabled through October 15, 2020, the end of his alleged period of closed disability. Plaintiff, however, explained that he amended the end date of his claim of disability because he was hired by his friend who gave him essentially sheltered employment.[5] Thus, concluding that he "returned" to gainful employment during the relevant period because of this job is not an accurate reflection of the record.

---

[5] Generally, the Court would consider Plaintiff's ability to return to work after the closed period as persuasive evidence of Plaintiff's ability during the closed period in a case alleging a degenerative condition such as Plaintiff's degenerative disc disease. Here, however, Plaintiff explains that the job he obtained in October 2016 had several special accommodations, such that it likely is subsidized employment. Plaintiff testified his current work is only possible because his employer allowed Plaintiff to change positions, excessive absenteeism, breaks to lie down flat on his back, and breaks to get up. AR 53-54. If a plaintiff works under special conditions, the Court may find that it does not follow that plaintiff had the ability to do substantial gainful activity.

> Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which—
>
> (1) You required and received special assistance from other employees in performing your work;
>
> (2) You were allowed to work irregular hours or take frequent rest periods;
>
> (3) You were provided with special equipment or were assigned work especially suited to your impairment;

The other job attempts by Plaintiff during the relevant time, from August 2016 through October 15, 2020, were not gainful employment. During Plaintiff's work attempts in 2017 and 2018 Plaintiff earned less than the permissible substantial gainful activity earnings threshold. AR 217-218. In June 2019, Plaintiff reported working part time "trying to sell photographs." AR 344. The ALJ failed to explain what in the record contradicts Plaintiff's testimony that these work attempts lasted under six months each because he missed three to five days of work each month due to pain. AR 48-49. "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, failed, that he did not then experience pain and limitations severe enough to preclude him from maintaining substantial gainful employment." *Lingenfelter*, 504 F.3d at 1038. Plaintiff's work activity is not a clear and convincing reason to discount his testimony.

### 4. Treatment Evidence

The ALJ found that "with limited conservative treatment, [Plaintiff] has reported improvement." AR 20. The Court assumes for purpose of this analysis that the ALJ found Plaintiff's improvement to be inconsistent with his testimony regarding his level of pain, his

---

(4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;

(5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or

(6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573. Plaintiff was allowed to take frequent rest periods, was allowed to work at a lower productivity rate due to his excessive absenteeism, and obtained the job because of his relationship with his friend. He thus works under special conditions and the Court does not consider his current work activity as evidence that he could work during the relevant period.

limitations in sitting, standing, and walking, his need to lay down on a flat surface, and his need for breaks and absences.

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Similarly, improvements with treatment is another indicator. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

Here, the ALJ pointed to two purportedly conservative treatments that supposedly caused Plaintiff's condition to improve: trigger point injections and TENS treatment. First, the ALJ found the plaintiff achieved some relief from "[c]onservative treatment including trigger point injections." AR 20. "Generally, Courts decline to consider a claimant's sustained treatment of injections to be 'conservative.'" *De Magana v. Comm'r of Soc. Sec.*, 2024 WL 870821, at *15

(E.D. Cal. Feb. 29, 2024) (citing cases); *see also Garrison v. Colvin,* 759 F.3d 995, 1015 n.20 (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (holding that prescription of "a variety of medications for . . . pain" along with facet and epidural injections was not conservative treatment). Courts in this circuit routinely conclude that trigger point injections are not conservative treatment. *See, e.g.*, *Denise J. v. Comm'r of Soc. Sec.*, 2024 WL 2974241, at *2 (W.D. Wash. June 13, 2024); *Kolish v. O'Malley*, 2024 WL 2878241, at *10 (D. Haw. June 7, 2024); *De Magana*, 2024 WL 870821, at *15. This treatment was not conservative and thus this reasoning by the ALJ was not clear and convincing.[6]

Second, the ALJ explained that Plaintiff "reported significant improvement with TENS treatment" AR 21. The ALJ first cited AR 405-499, Plaintiff's health summaries from the Department of Veteran's Affairs. This citation is too broad to allow for meaningful review. The ALJ also cited AR 567, 571-75. Most of these records do no more than list Plaintiff's conditions and medications. The last few pages, however, reflect a July 17, 2020, physical therapy appointment in which Plaintiff's therapist trialed the "H-wave" electrical stimulation device, and Plaintiff's pain was reduced to a level "2" out of "10" after the machine was used. AR 573-74. Despite this improvement at the appointment itself, Plaintiff reported two weeks later that his condition got "worse with prolonged sitting, standing or walking." AR 571 (chart note from July 29, 2020 stating that Plaintiff "improved with TENS and H-wave at PT here" but then his condition got worse with prolonged sitting, standing, or walking); *see also* AR 430 (health summary chart note from July 29, 2020 stating same).

---

[6] The record also does not support that these treatments provided any lasting improvement.

Additionally, Plaintiff points to evidence in the record that showed his symptoms after this treatment were mixed and relief did not last. Plaintiff specifically cites doctors' appointments throughout 2020 in which he showed an abnormal range of motion, abnormal gait, sensation issues, pain, and numbness. *See* AR 413-418, 421. The ALJ failed to identify substantial evidence in the record showing that Plaintiff had lasting, significant improvement from TENS treatment or from the H-wave treatment, or a combination thereof. Therefore, the ALJ failed to show this was a clear and convincing reason to discount Plaintiff's testimony.

### 5. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester,* 81 F.3d at 834); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The Court has rejected the ALJ's other reasons for discounting Plaintiff's subjective symptom testimony. The ALJ's opinion that the objective medical evidence does not corroborate Plaintiff's alleged limitations alone cannot discount Plaintiff's testimony. Therefore, the ALJ failed to provide sufficient reasoning to discount Plaintiff's testimony.

## B.  Medical Opinion Evidence

Plaintiff argues that the ALJ erred in finding physician's assistant (PA-C) Carol Flaguher's medical opinion not persuasive and in finding the testifying medical expert Dr. John

Kwock's medical opinion persuasive. Plaintiff filed his application for benefits on February 19,

2020. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. §§ 404.1520c

governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding*

*the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new

regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most

"persuasive." 20 C.F.R. §§ 404.1520c(a)-(b). The new regulations eliminate the hierarchy of

medical opinions and state that the agency does not defer to any particular medical opinions,

even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw

according special deference to the opinions of treating and examining physicians on account of

their relationship with the claimant."). Under the new regulations, the ALJ primarily considers

the "supportability" and "consistency" of the opinions in determining whether an opinion is

persuasive. 20 C.F.R. §§ 404.1520c(c). Supportability is determined by whether the medical

source presents explanations and objective medical evidence to support his or her opinion. 20

C.F.R. §§ 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with

evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

to factors such as the length of the treatment relationship, the frequency of the claimant's

examinations, the purpose of the treatment relationship, the extent of the treatment relationship,

and whether there is an examining relationship. 20 C.F.R. §§ 404.1520c(c)(3). An ALJ is not,

however, required to explain how he or she considered these secondary medical factors, unless

he or she finds that two or more medical opinions about the same issue are equally well-

supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

### 1.  PA-C Flaugher

Carol Flaugher is a physician's assistant at the Johnathan M. Wainwright Veteran Affairs Medical Center who completed a disability evaluation of Plaintiff on December 13, 2019. AR 411-422. PA-C Flaugher reviewed Plaintiff's medical record, including an MRI from April 2016, and conducted a physical examination. AR 411-412, 420-21. PA-C Flaugher found that Plaintiff suffers from lumbosacral strain, degenerative arthritis of the spine, intervertebral disc syndrome, and bilateral radiculopathy. AR 412-413. PA-C Flaugher opined that Plaintiff's condition affected his ability to work in the following ways:

> Sitting limited to 30 minutes. Standing limited to 15 minutes. Must lay on a hard surface on his back. Impaired sleep due to pain. Walking limited to 1/2 mile slow pace and even ground. No running, joggin[g], play sports. Lifting limited to < 20 pounds. Driving limited to 1 hour and must get out and move.

AR 421.[7] PA-C Flaugher noted that Plaintiff's back symptoms had progressed since 1992. AR 412. PA-C Flaugher further found that Plaintiff's symptoms and pain flare up one to two times per month which takes four to five days to resolve. AR 413.

The ALJ did not specifically address PA-C Flaugher's opinion. The ALJ ended her assessment of the medical evidence by commenting that "[a]ny other indications of limitations in the record" were not persuasive because of Plaintiff's unremarkable examinations and improvement with limited treatment. The ALJ also commented that "endorsements of disability percentages" by the Veteran's Administration (VA) are not persuasive because such determinations are not based on the ability to work and the VA uses different criteria to assess disability. The latter point, however, is not a reason to discount PA-C Flaugher's medical opinion, which as a medical source statement requires analysis under the Social Security Regulations. She also did not opine as to a percentage of disability, but provided functional limitations assessing Plaintiff's ability to work.

The Commissioner argues that the ALJ did not need to address PA-C Flaugher's opinion because it post-dated Plaintiff's date last insured. PA-C Flaugher's opinion, however, clearly relied extensively on Plaintiff's April 15, 2016 MRI in determining its functional impact. *See* AR 421. Thus, it is not a rational reading of the record to conclude that PA-C Flaugher's limitations could not be considered present during the relevant period.

Considering the two general reasons the ALJ gave for discounting "any other indications of limitations in the record," which are the only reasons that could apply to discount PA-C

---

[7] The ALJ noted that Plaintiff was instructed to "get out and move" as if this was an instruction to exercise. The context of the report by PA-C Flaugher, however, is clear that Plaintiff was not being instructed to generally "move" more, but that he had reported, and PA-C Flaugher agreed, that Plaintiff was *limited* to driving for only one hour before he would have to be given leeway to get out of the vehicle and move to alleviate his back symptoms.

Flaugher's opinion, the Court already has rejected the ALJ's contention that Plaintiff improved with treatment. Regarding the ALJ's conclusion that Plaintiff's medical record shows unremarkable findings, the ALJ discussed Plaintiff's medical visits with purportedly unremarkable results such as full ranges of motion, normal gait, and full strength, reflexes, and sensations, citing more than 20 examinations beginning on the amended alleged onset date of August 1, 2016.[8] *See* AR 20-21 (citing AR 297-311, 320, 327, 331, 334, 354, 400-404, 612, 620-649, 756, 785-786, 790, 802).

There are two problems with the ALJ's reasoning. First, some of the examinations the ALJ cited as having unremarkable results contained abnormal results. Examinations from 2016 and 2017 include notes that "patient does appear uncomfortable throughout the exam," and that results were abnormal for at least one reflex test. AR 620-624, 627-630. A lumbar assessment from 2016 shows poor sitting, moderate flexion loss, and major extension loss. AR 649. A 2016 examination shows midline spinal and paralumbar tenderness as well as moderately decreased extension. AR 756-57. A 2017 examination shows downgoing plantars reflex, decreased sensation in the lateral lower leg, and mild tenderness in the paraspinal cervical spine. AR 790.

Second, there are several other pieces of remarkable evidence that the ALJ ignored. There are a few mentions of Plaintiff's 2016 MRI in the record that discuss his L4-5 disk herniation with moderate to severe central canal stenosis, moderate to severe bilateral recess stenosis at L5-S1, and L5-S1 bulging disk abutting the S1 nerve root with mild canal and foraminal narrowing. *See* AR 306, 421, 624. There also is Plaintiff's neurosurgery consult from 2016 which found lumbar spine tenderness, myofascial tenderness to palpation, left L5 and S1

---

[8] The ALJ also cited examinations from before the amended alleged onset date of August 1, 2016. *See* AR 20-21 (citing AR 678, 700, 710, 721, 728, 739, 745, 751). The Court, however, only focuses on the examinations that occurred after the amended alleged onset date.

dysesthesia, decreased achilles, hoffman's and plantar reflexes, and positive straight raise.

AR 623-624. Plaintiff also had examinations in 2016 and 2017 that show lumbar tenderness,

decreased reflexes, decreased sensation, and positive straight raise. *See* AR 308 ("decreased

sensation noted in the lateral lower left leg" and "mild tenderness in the paraspinal cervical

spine"); 629-630 ("lumbar spine shows there is tenderness in the midline of the L4, L5, S1

levels . . . there is significant bilateral myofascial tenderness" and "sensory exam shows left L5

and S1 dysesthesia and loss of sensation"); 649 (shows poor sitting, moderate loss of flexion, and

major loss of extension); 651 (shows present condition is worsening, bending is worse, gait is

abnormal, and sitting is poor); 756-757 (shows midline spinal and parathoracic tenderness,

moderately decreased extension, decreased sensation, and positive straight leg raise); 763 (shows

decreased sensation and positive straight leg raise).

These problems with the ALJ's reasoning, taken together, reveal that substantial evidence

does not support this reason given by the ALJ to discount PA-C Flaugher's opinion. Thus, the

ALJ did not provide any sufficient reason to discount PA-C Flaugher's opinion based on the

supportability and consistency factors.

## 2. Dr. Kwock

Plaintiff argues that the ALJ erroneously relied on the opinion of Dr. John Kwock, a non-

examining, testifying medical expert, who found Plaintiff is capable of medium work. AR 21.

The Commissioner responds that the ALJ did not err in evaluating Dr. Kwock's opinion and

even if the ALJ erred, any error would be harmless because the ALJ's RFC is more limited than

Dr. Kwock's opinion.

Dr. Kwock found Plaintiff's only impairment to be degenerative disc disease and cited

"x-rays" from 2019. AR 34-35 (citing AR 494-95). The ALJ summarized that Dr. Kwock found

"no other information as to the nature and severity of the [plaintiff's] degeneration or overall

condition." AR 21. The ALJ found Dr. Kwock's testimony persuasive because he "had the

claimant's entire record for review," and his opinion was consistent with Plaintiff's record. *Id*.

The ALJ did not point to any evidence in the record besides the 2019 x-rays to support

Dr. Kwock's opinion.

  Plaintiff argues that Dr. Kwock failed to review the entire medical record and therefore

failed to support his findings with evidence in the medical record. Plaintiff believes that

Dr. Kwock's opinion ignored Plaintiff's 2016 MRI and various remarkable examinations.

Plaintiff's counsel raised with Dr. Kwock the issue of whether he considered Plaintiff's April 15,

2016 MRI with its significant specific findings, and Dr. Kwock responded that the discussion of

this "x-ray" did not state "when that x-ray was taken, what x-ray they are talking about" and that

he could not rely on such evidence because he "will have counsel now tell me, okay, but you

can't even tell me the date of this X-ray, that kind of thing." AR 37-38. Plaintiff's counsel then

concluded that because the date of the MRI was on the referencing chart notes and Dr. Kwock

testified that there was no evidence in the record showing any severity or problem, there was no

point in asking further questions to have similar "backtracking." AR 38.

  Dr. Kwock mischaracterized the evidence in the medical record when he testified that the

only information as to the nature and severity of Plaintiff's degeneration and overall condition

were the 2019 x-rays. As Plaintiff points out, there are several mentions of his 2016 MRI in the

record. *See* AR 306, 421, 624. These discussions included the date of the MRI and its specific

findings. *See* AR 306 ("I reviewed his MRI of his lumbar spine performed in April 2016

demonstrating L4-S disk herniation with moderate central canal stenosis and L5-S1 bulging disk

abutting the Sl nerve root with mild canal and foraminal narrowing."); 421 ("MRI 4/15/16

SPONDYLOSIS L4 - S1 AND SEVERE CENTRAL STENOSIS L4-5 AND LATERAL

RECESS STENOSIS L5 -S1." ); 624 ("The patient's imaging was reviewed in detail with the

patient today during the visit. The MRI of the lumbar spine from 4/15/16 demonstrates

spondylosis L4-S1. There is resulting severe central stenosis at L4-5 and moderate to severe

bilateral lateral recess stenosis at LS-81."). They are sufficient evidence on which to consider

Plaintiff's condition.

 Additionally, there were other examinations with remarkable findings relating to

Plaintiff's claimed symptoms. In August 2016 Plaintiff's examination found left L5 and S1-type

dysesthesia. AR 624. In September 2016 Plaintiff's examination found myotomal loss of the

lower extremities of L5/S1, decreased flexion and extension in lumbar range of motion, and

significant impairment consistent with lumbar derangement. AR 649. In March 2017 Plaintiff's

examination found left L5 and S1-type dysesthesia and loss of sensation. AR 630. In May 2017

Plaintiff's examination found decreased sensation in the lateral lower leg. AR 308.

 The ALJ did not properly assess whether Dr. Kwock's testimony that the record lacks

medical evidence of Plaintiff's condition was consistent with and supported by substantial

evidence in the medical record. The ALJ ignored the evidence in the record that contradicted or

failed to support Dr. Kwock's opinion and simply stated that Plaintiff's imaging showed no

significant musculoskeletal deficits or abnormalities (ignoring the evidence of Plaintiff's 2016

MRI) and that Plaintiff returned to work at the substantial gainful activity, which the Court has

rejected with respect to the relevant period.

 As stated above, the Commissioner argues that any error in finding Dr. Kwock's opinion

persuasive should be found harmless. An error is harmless if it is "inconsequential to the ultimate

nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also*

*Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record [the]

error was inconsequential to the ultimate non-disability determination". Considering this error in combination with the errors of discounting Plaintiff's subjective symptom testimony and PA-C Flaugher's medical opinion, the Court cannot definitively determine that finding Dr. Kwock's opinion persuasive did not impact the RFC determination. Thus, the Court cannot conclude this was harmless error.

## C.  Step Five

Plaintiff also challenges the ALJ's step five analysis, arguing that the hypothetical posed to the vocational expert was erroneous because it did not include limitations based on Plaintiff's subjective symptom testimony and PA-C Flaugher's medical opinion. Because the Court agrees with Plaintiff that his testimony and PA-C Flaugher's opinion were improperly discredited and that Dr. Kwock's opinion was erroneously relied upon, Plaintiff's RFC and the resulting hypothetical to the vocational expert should be reviewed upon remand.

## D.  Remedy

Plaintiff requests that the Court award benefits or remand for further proceedings. Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison,* 759 F.3d at 999. The Court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, the ALJ committed harmful error by improperly discounting Plaintiff's subjective symptom testimony and PA-C Flaugher's medical opinion as well as by finding Dr. Kwock's medical opinion persuasive. Conflicts and ambiguities, however, remain in the record. Therefore, further proceedings will allow the ALJ to reconsider Plaintiff's testimony and properly consider the supportability and consistency factors for PA-C Flaugher. The ALJ also may consider calling another medical expert instead of Dr. Kwock to review the entire record and consider all of the medical evidence. For these reasons, a remand for benefits is not appropriate.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 25th day of July, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge